# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | |
|---|---|
| RONALD NICHOLLS | CIVIL ACTION NO. 3:11-cv-0113 |
|     LA. DOC #153763 | |
| VS. | SECTION P |
| | JUDGE ROBERT G. JAMES |
| SHERIFF ANDY BROWN, ET AL. | MAGISTRATE JUDGE KAREN L. HAYES |

### REPORT AND RECOMMENDATION

*Pro se* plaintiff Ronald Nicholls, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on January 4, 2011. Plaintiff,  an inmate in the custody of Louisiana's Department of Public Safety and Corrections, is incarcerated at the Jackson Parish Corrections Center (JPCC), Jonesboro, Louisiana.  In his original complaint plaintiff implied that the defendants  were interfering with his right of access to the courts and were denying him  a salt free diet.  In an amended complaint he alleged only that he was receiving inappropriate medication for his psychiatric problems. In his original complaint, plaintiff sued Jackson Parish Sheriff Any Brown, JPCC Warden B. Tigner, Assistant Warden Ducote, Lt. Blackwell , John Thomas and Nurse Whitehead; in his amended complaint he named Brown, Tigner, Dr. Pamela Hearn, Whitehead and Blackwell.  His original  prayer for relief stated, "I would like to be able to eat right without salt in it, also be able to give my time back in the Department of Corrections soon."  In his amended complaint he prayed for money damages of $200,000 for pain and suffering, "access to a psychiatrist", an order directing the Warden to provide the proper medication and that unspecified sanctions be imposed on the Sheriff "for his failure to remedy this atrocious act."

This matter has been referred to the undersigned for review, report, and recommendation in

accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons it is recommended that plaintiff's complaint be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted.

### *Background*

### *1. Original Complaint [Doc. #1]*

Plaintiff, an inmate in the custody of the LDOC, is incarcerated at JPCC. On January 4, 2011 he filed his original complaint.  He claimed that he was "... having problems getting law work taken care..." despite having written to Warden Tigner, Assistant Warden Ducote, Sheriff Brown and Major Thomas.

Plaintiff also complained that he has "high blood" (pressure) and is fed a diet that includes salt. Plaintiff claimed that he spoke to the physician and Nurse Whitehead and the latter apparently agreed to investigate the issue but she did not.  Plaintiff prayed "... to be able to eat right with out salt in it, also be able to give my time back, in the Department of Corrections soon."  Plaintiff included with his complaint a copy of the "Request for ARP Form" he submitted on November 12, 2010 raising claims identical to those in the complaint.

### *2. Amend Order and Amended Complaint [Docs. #4-5]*

Since the complaint and its prayer for relief were somewhat ambiguous, plaintiff was ordered to amend and to provide more than just conclusory allegations to support what were interpreted to be  access to courts and dietary/medical care claims.[1]

---

[1] Plaintiff was ordered to provide – (1)  the name of each person  who allegedly violated plaintiff's constitutional rights; (2)  a description of what actually occurred or what each defendant did to violate plaintiff's rights;)  the place and date(s) that each event occurred; and (4)  a description of the alleged injury sustained as a result of the alleged violation. Plaintiff was also ordered to describe the "law work" he wanted assistance with, and he was directed  to allege

On March 16, 2011, plaintiff filed an amended complaint in which he added Dr. Pamela Hearn as a defendant and omitted any further reference to Assistant Warden Ducote and John Thomas. Plaintiff made no further mention of his access to courts and dietary claims and instead alleged only that he was receiving improper care for his pre-existing psychiatric illness.

According to the amended complaint, plaintiff was the victim of a gun shot wound to the head in 1991.  His resulting physical and psychological injuries were treated at Charity Hospital in New Orleans; an unnamed physician prescribed phenobarbital, "dielentien", and "Mirtazipine."[2]

He was apparently arrested and incarcerated on some unspecified date following his hospitalization and he was treated by Dr. Richard Richeaux at the Jefferson Parish Correctional Center. According to plaintiff, Dr. Richeaux prescribed the same medications provided to plaintiff during his treatment at Charity Hospital.

On some unspecified date plaintiff was transferred to JPCC.  On November 30, 2010,

---

what harm or injury he has sustained as a result of the defendants' failure to assist him. Finally, he was ordered to describe with more specificity the dietary problems he was experiencing and the injury or harm which has befallen him as a result of the current diet. Finally he was ordered to amend his complaint to provide a detailed and coherent statement of the relief he seeks in this action.

[2] Phenobarbital, a barbiturate, is used to control epilepsy (seizures) and as a sedative to relieve anxiety. It is also used for short-term treatment of insomnia to help patients fall asleep. It is assumed that plaintiff is referring to Dilantin® or phenytoin a medication which is used to control certain type of seizures, and to treat and prevent seizures that may begin during or after surgery to the brain or nervous system. Phenytoin is in a class of medications called anticonvulsants. It works by decreasing abnormal electrical activity in the brain. Mirtazapine is used to treat depression. Mirtazapine is in a class of medications called antidepressants. It works by increasing certain types of activity in the brain to maintain mental balance.

See Medline Plus, Drugs & Supplements, A service of the U.S. National Library of Medicine and the National Institutes of Health,  http://www.nlm.nih.gov/medlineplus/druginformation.html

plaintiff wrote a sick call request concerning his medication. Nurse Whitehead advised plaintiff that the medication had been discontinued and that plaintiff was on the list of inmates who would soon be examined by the physician.

Plaintiff was ultimately examined by Dr. Hearn on December 17, 2010. Dr. Hearn advised plaintiff that she had discontinued the previously ordered medications and prescribed "triazidone."[3] Plaintiff complained that Dr. Hearn failed to properly evaluate him and, that she was not a psychiatrist. Plaintiff apparently informed Dr. Hearn of his "previous experience" with the drug but the physician refused to listen to plaintiff and instead had him escorted from the clinic. On December 18, 2010, plaintiff filed a written complaint with Sheriff Brown and an emergency request to Warden Tigner. Neither responded to plaintiff's grievances.  According to plaintiff, "this negligence" has resulted in plaintiff's speech becoming slurred and jumbled and he now suffers from racing thoughts, mild dementia and memory loss.

In his amended complaint plaintiff prayed for $200,000 in damages for pain and suffering and an order granting him "access to a psychiatrist."

### Law and Analysis

#### 1. Screening

When a prisoner is allowed to proceed *in forma pauperis* in a suit against an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the

---

[3] Plaintiff may be referring to Trazodone a medication used to treat depression. Trazodone is in a class of medications called serotonin modulators. It works by increasing the amount of serotonin, a natural substance in the brain that helps maintain mental balance. Trazodone is also sometimes used to treat insomnia and schizophrenia (a mental illness that causes disturbed or unusual thinking, loss of interest in life, and strong or inappropriate emotions); anxiety (excessive worry). Trazodone is also sometimes used to control abnormal, uncontrollable movements that may be experienced as side effects of other medications. *Id.*

complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. . *Ashcroft v. Iqbal,* ___ U.S. ___, 129 S.Ct. 1937, 1949,  173 L.Ed.2d 868 (2009); *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Courts are not only vested with the authority to dismiss a claim based on an indisputably meritless legal theory, but are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Neiztke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

In his original complaint, plaintiff implied that he was being denied access to the courts; he also implied that his dietary needs were not being met. His complaints and prayer for relief were ambiguous and he was directed to amend to provide very specific facts in support of his claim. Instead, he filed an amended complaint raising a medical care claim that was not mentioned in his

5

original complaint. Further opportunities for amendment would serve no useful purpose. The allegations, taken as true for the purposes of this report, simply fail to state a claim for which relief may be granted.

### 2. Access to Courts

Plaintiff complained that he was "... having problems getting law work take care..."  He prayed that would "be able to give my time back in the Department of Corrections..." The undersigned concluded that plaintiff raised an access to courts claim and directed him to amend his complaint to provide more than the conclusory allegations raised in the initial complaint. Plaintiff chose to ignore this directive.

No prisoner should be denied the opportunity to present to the courts  allegations concerning violations of fundamental constitutional rights concerning either the legality of their convictions and confinement or the conditions under which they are confined.  *Lewis v. Casey*, 518 U.S. 343, 116 S.Ct. 2174, 2180, 135 L.Ed.2d 606 (1996); *Norton v. Dimazana*, 122 F.3d 286, 289 (5th Cir.1997). However, prison officials  have considerable discretion in choosing the mechanism and forms of assistance they will furnish to prisoners for the purpose of allowing prisoners to file non-frivolous legal claims.  *See Lewis v. Casey*, 518 U.S. at 356, 116 S.Ct. at 2182, ("Of course, we leave it to prison officials to determine how best to ensure that inmates... have a reasonably adequate opportunity to file non-frivolous legal claims challenging their convictions or conditions of confinement.")

The Supreme Court has not extended the right to access the courts to encompass any more than the ability of an inmate to prepare and transmit a necessary legal document to a court. *Brewer v. Wilkinson*, 3 F.3d 816,  821 (5th Cir. 1993), cert. denied, 510 U.S. 1123, 114 S.Ct. 1081, 127

6

L.Ed.2d 397 (1994) (citing *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Cgt. 2963, 41 L.Ed.2d 935 (1974) and *Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974)); see also *Lewis v. Casey*, 518 U.S. at 354 , 116 S.Ct. at 2181.

Plaintiff has not alleged facts sufficient to conclude that he was denied a right of access to the courts. Further, even assuming that plaintiff would be able to demonstrate that the defendant somehow deprived him of his constitutional right of access to the courts,  he must still allege facts to establish that he suffered some prejudice as a result of the deprivation.  *See Lewis v. Casey*, 518 U.S. at 350-355, 116 S.Ct. at 2179- 81; *Eason v. Thaler*, 73 F.3d at 1328; *Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir.1993); *Henthorn v. Swinson*, 955 F.2d 351, 354 (5th Cir.1992), *cert. denied*, 504 U.S. 988, 112 S.Ct. 2974, 119 L.Ed.2d 593 (1992); and *Richardson v. McDonnell*, 841 F.2d 120, 122 (5th Cir.1988).  In *Lewis v. Casey*, the Court noted that prior "access to courts" jurisprudence  "...did not create an abstract, freestanding right to a law library or legal assistance...", and that  "...an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense..." The Supreme Court reaffirmed the longstanding requirement that inmates claiming a violation of their right of access must show actual injury. *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 2180.

Plaintiff has wholly failed to allege any <u>specific</u> facts establishing that he was <u>actually prejudiced</u> in connection with any proposed or on-going litigation.  Further, his prayer for relief, requesting the ability to "give my time back in the Department of Corrections" is incomprehensible. Plaintiff was afforded the opportunity to clarify this claim and chose not to. His complaint fails to state a claim for which relief may be granted.

### *3. Diet*

Plaintiff also complained that he suffers from high blood pressure and therefore should be afforded a salt-free diet. Again, he was directed to amend his complaint to provide more than mere conclusory allegations and, again, he failed to address this claim in his amended complaint.

The Constitution mandates that inmates be provided " 'well-balanced meal[s], containing sufficient nutritional value to preserve health.' " *Green v. Ferrell*, 801 F.2d 765, 770 (5th Cir.1986) (quoting *Smith v. Sullivan*, 553 F.2d 373, 380 (5th Cir.1977)) (footnote omitted); see also *Eason v. Thaler*, 73 F.3d 1322, 1327 (5th Cir.1996) ( per curiam) ("To comply with the Constitution, inmates must receive 'reasonably adequate' food.").  "The deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the 'minimal civilized measure of life's necessities.' " *Talib v. Gilley*, 138 F.3d 211, 214, n. 3 (5th Cir.1998)(quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991)) (internal quotations omitted). "Whether the deprivation of food falls below this threshold depends on the amount and duration of the deprivation." *Id.*

Here, plaintiff does not allege that he was denied anything close to the "minimal measure of life's necessities...".  Nor did he allege any specific physical harm resulting from the defendants' alleged dietary failures.  He did not claim that suffered any adverse physical effects as a result of the complained of diet; nor did he intimate that he would suffer absent this court's intervention into the dietary operations of the prison.  Plaintiff offered only a conclusory allegation that the prison diet was inappropriate to his condition,  and that is insufficient to state a claim for which relief might be granted.

### *4. Medical Care*

Finally, in his amended complaint plaintiff claimed that he was denied prompt and

8

appropriate medical care by Nurse Whitehead and Dr. Hearn.  The constitutional right of a convicted prisoner to safe conditions of confinement and prompt and adequate medical care is based upon the Eighth Amendment's prohibition of cruel and unusual punishment. Rights guaranteed under the Eighth Amendment are violated only if the defendants act with deliberate indifference to a substantial risk of serious harm which results in injury. Deliberate indifference requires that the defendants have subjective knowledge of the risk of harm.  Mere negligence or a failure to act reasonably is not enough. The defendants must have the subjective intent to cause harm. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

Thus, in order to establish an actionable constitutional violation a plaintiff must allege facts tending to establish that the defendants were deliberately indifferent to his serious medical needs and safety.  *Thompson v. Upshur County, Texas*, 245 F.3d 447, 457 (5th Cir.2001). A showing of deliberate indifference with regard to medical treatment requires the inmate to submit evidence that prison officials " 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.' " *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001) (citation omitted). Plaintiff's pleadings fall far short of alleging facts sufficient to establish deliberate indifference on the part of any of the named defendants or any of the other corrections officers or healthcare officials identified in his pleadings.

As a matter of fact, it is manifestly obvious that plaintiff simply disagrees with the diagnosis and course of treatment that were recommended by Dr. Hearn who examined plaintiff on December 17, 2010, and concluded that plaintiff no longer required the medication previously ordered. Plaintiff's disagreement with the diagnosis and course of treatment that was ultimately provided to

9

him falls far short of establishing deliberate indifference since mere disagreement with medical diagnosis or treatment does not state a claim under the Eighth Amendment. *See Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997), citing *Young v. Gray*, 560 F.2d 201, 201 (5th Cir.1977); *Spears v. McCotter*, 766 F.2d 179, 181 (5th Cir.1985).

At worst, plaintiff implies negligence or malpractice on the part of these defendants with regard to his medical care claim.   However, deliberate indifference is not the equivalent of negligence; deliberate indifference "describes a state of mind more blameworthy than negligence." *Farmer v. Brennan*, 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Under the deliberate indifferent standard, it is not sufficient that defendants should have known of a substantial risk; they must have actual knowledge of the risk and must thereafter have ignored it.   In other words, a civil rights  plaintiff must allege and prove that each of the  defendants knew of and then disregarded an excessive risk of injury to him, and,  that they were both aware of the facts from which the inference could be drawn that a substantial risk of serious harm existed, and that they drew that inference. *Id.* at 837.

In short, treatment decisions are a classic example of a matter best left to the medical judgment of health care professionals.   *Gobert*, 463 F.3d at 346.  It is for that reason that  mere disagreement with medical diagnosis and  treatment does not state a claim for deliberate indifference to serious medical needs under the Eighth Amendment. *Id.*

Plaintiff has again failed to state a claim for which relief may be granted.

### *Recommendation*

Therefore,

**IT IS RECOMMENDED** that plaintiff's civil rights complaints be **DISMISSED WITH**

**PREJUDICE** for failing to state a claim on which relief may be granted in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association,* 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, April 28, 2011.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE

11